IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF INDIANA
THE INDIANAPOLIS DIVISION

**FILED**
08/16/2021
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

MARCUS DILLARD,
Petitioner/Movant,

Vs.

UNITED STATES OF AMERICA,
Respondant(s).

CASE NO: 1:20-CV-03224-SED-TAB
PETITIONER'S AMENDED MEMORANDUM
LAW IN SUPPORT OF MOTION
28 U.S.C. §2255
(EVIDENTIARY HEARING REQUESTED)

(1).Comes now Marcus Dillard, Pro-Se (Known hereafter as petitioner) and moves this Honorable Court by and through the above styled action for the reasons set herein below:

(2). Petitioner Mr.Marcus Dillard, avers that he has filed in the above case his petition for leave to amend his §2255 motion on or about 05/17/21. This petition for leave was neither denied or granted, and Mr.Dillard, feels that he has been prejudiced by the delays and silence of his petition eventhough, he was entitled to amend pursuant to Fed.R.Crim. P. , before the parties responded. The United States has had multiple motions granted for an extention of time which the last was granted by this court on or about 07/06/21.

(3).Mr.Marcus Dillard, should be now permitted to allow his amended Memorandum of Law in support of his motion §2255, that it may be heard as part of his motion pending before this Honorable Court, to prevent a total miscarriage of justice.

(4).Mr.Marcus Dillard, would also like to stress to this court that he is a pro-se litigant and should be given a degree of understanding, so this Honorable Court should construe his filings here liberally.

## INEFFECTIVE ASSISTANCE OF COUNSEL
## VIOLATION OF DUE PROCESS

(5).Petitioner avers and states, that his trial counsel had lied and mislead him to sign an otherwise unknowing and intelligent plea before this court, and Mr.Dillard admits he signed a plea agreement however, he denies signing this waiver with the help, knowledge and the assistance of his counsel, which did not go over the agreement and did coerce him into signing this agreement without going through the plea and explaining the dangers of signing such a plea.

## INFORMATION VERSUS INDICTMENT

(6)Mr.Dillard's counsel failed to object to the convicting court's failures to obtain an explicit waiver for the indictment that deprived the court of jurisdiction to accept the plea of guilty, in absence of a valid waiver, and the lack of an indictment in a felony prosecution is such a defect affecting the jurisdiction of this court please see: United States vs. Moore, 37 F.3d 169, 173(5th Cir.1994). Because it implicates jurisdiction, whether an indictment was required is a said question of the court should review de novo, United States vs. Gaudet, 81 F.3d 585, 589(1996).  The charging offense was a felony then an indictment or an explicit waiver in "OPEN COURT," would have and was Mandatorially required see: Fed.R.Crim.P. Rule 7(b).

Mr.Dillard, was never properly indicted at all, and this court never conducted a hearing required to give Mr.Dillard an opportunity to plead to information or be prosecuted by indictment or atleast told by this court, or his counsel, or setforth in his plea of the choice which clearly deprived Mr.Dillard of his Constitutionally protected right to Due Process.

2.

## COUNSEL'S FAILURE TO INVESTIGATE
### OR PREPARE PROPER DEFENCES

(7).Petitioner's counsel was ineffective and incompetent in his duty as counsel and counsel assisted in the violation of his Client's Constitutionally protected rights of Due Process or prepare proper defences and thus the outcome of trial proceedings would have been different if not for his counsel's failures highlighted in his arguments below.  Counsel had failed to present mitigating evidence in favor of his client Mr.Dillard, nor did counsel file for or allow Mr.Dillard the opportunity to inspect a full and complete discovery in his case.  Counsel did not present any exculpatory evidence or any proper defenses beyond coercing Mr.Dillard to plea to the charges and not fully explain to Mr.Dillard the dangers of such a plea without first seeing the evidence that could be used against him.

Counsel did not investigate the facts of intrapment as it was very obvious that Federal and State officials were out to intrap him as they was not stopping him for a violation of traffic laws instead had been watching him and awaiting him to leave his residence.  Counsel failed to explain to the petitioner the true meaning behind the alleged stop.

It was very obvious that the agents lied to this court and the United states played into those lies.  Counsel further failed to an interview of prospective defense witnesses or entrapment witness's.

Counsel failed to interview the officer's before having his client take an unknowing and intelligent plea., instead lying to Mr.Dillard and rushing him into a plea without fully preparing for a plea with the United States. Counsel induced and coerced the plea of Mr.Dillard, and failing to fully explore the opportunity to withdraw his plea as many things were wrong in this case.

Counsel was ineffective and did not represent Mr.Dillard, to the very best of his ablility and knowledge.

(8).Petitioner, further states that Counsel's incompetencies did render ineffective assistance of counsel by failing to investigate and failure to explain the risk's and benefits of pleading versus going to trial where petitioner's charges could have been thrown out for the many errors made in hiscase and the trial court jury would not have convicted him. Counsel had failed to request time to review all Jenks materials and request a voluntariness hearing, and failing to secure any expert witness to counter the Government and its claims.

Nor did counsel file pretrial motions such as motion to dismiss or surpress evidence, and his failure to investigate impeachment evidence and failed to object to, note, or argue any corrobarating evidence or aggravating felony. Counsel had petitioner admit to aggravating factors without Mr.Dillard's, consent. Counsel's failures to give any mitigating evidence in favor of his client before or at sentencing.

Counsel had at his exposal unlimited resources to investigate factors that could have helped Mr.Dillard, such as his childhood, social and mental issues that could have had an impact for a lessor sentence for his client Mr.Dillard.,these deficiencies fell well below the Strictland standards level of performances as he lied to this Honorable Court in its writing and addendum stating he had in fact went over the plea and all evidence with Mr.Dillard. When in fact he never met with him at all to discuss the plea or evidence. Mr.Dillard, was never apprised of the charges or evidense in this case against him, nor was he explained by counesl his intelligent plea waivers, and the fact the court should have held a special hearing to waive indictment.

## VIOLATION OF PETITIONER'S PLEA
## COLLOQUY IN VIOLATION OF HIS RIGHTS TO DUE PROCESS

(9).Petitioner's counsel had failed to object to the court's failures during the plea colloquy, rendering petitioner ineffective assistance of counsel. Petitioner's guilty plea to possessing with intent to distribute herion in alleged violation of title 21 U.S.C.§841 (a)(1),(b)(1)(C), and knowingly using a firearm during and in relation to a drug trafficking crime 18 U.S.C.§924(c), which was plain error pursuant to Fed.R.Crim.P. 11(b)(3) because the court failed to determine

...that there was a factual basis for his plea, particularly regarding the intent to distribute element of the drug offense. Factual basis was established only to find petitioner Mr.Dillard, guilty of possession "not possession with intent to distribute where the Government made no statements regarding the offense in particular the intent element, furthermore, Mr.Dillard was not once asked by the court or counsel what he believed to be the crime he committed, and or facts to which he stipulated that could support the offense. Morever, Mr.Dillard's plea was unknowingly made in violation of Rule 11(b)(1)(G), especially where the court did not question Mr.Dillard to determine if he even understood the intent element of the drug charge United States vs. McCreary-Redd, 475 F.3d 718(6th Cir.2007).

For the petitioner to merely state in his plea petition drafted by his incompetent counsel, that he recieved a copy of the information, "because he never was indicted," and whether Mr.Dillard, Believes and feels that he fully understood every accusation made against him, and that counsel had informed him as to the nature of the charge, and cause of every accusation provides no basis from which the court could conclude that he does in fact understand the charges where the court never did specificly referred to statements and did not personally inquir into his full knowledge and understanding United States vs. wetterlin,583 F.2d 346(7th Cir.1978); United States vs. Pinda-Buenaventura,622 F.3d 761 (7th Cir.2010). Mr.Dillards Constitutional Rights were and did get violated, where the hearing during Colloquy shows that Mr.Dillard even fully understood what was being done to convict him of the charges.

Counsel was ineffective and incompetent and this matter deserves a hearing to determine the facts herein.

A.   **Pretrial Counsel's Failure To: (1) Inform Dillard of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial; (2) File Any Substantive Pretrial Motions; (3) Conduct an Adequate and Independent Pretrial Investigation; and (4) Attempt to Negotiate a Favorable Plea Agreement Deprived Dillard of Effective Assistance of Pretrial Counsel under the Sixth Amendment of the Constitution of the United States.**

1.   Inform Dillard of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial

Chapter 1, Rule 1.4: Communication of the Indiana Rules of Professional Conduct states that:

(a)   A lawyer shall:

   (1)   promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

   (2)   reasonably consult with the client about the means by which the client's objectives are to be accomplished;

   (3)   keep the client reasonably informed about the status of the matter;

   (4)   promptly comply with reasonable requests for information; and

   (5)   consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Harold Samuel Ansell ("Ansell"), was Dillard's appointed counsel from pretrial to sentencing. There was not any reasonable communication from the beginning of his case between

6.

Dillard and Ansell, so that he could effectively participate in his defense. He certainly did not meet the standard as set forth above in Rule 1.4 of the Indiana Rules of Professional Conduct or any other professional norm for that matter. He failed to reasonably consult with Dillard about the means to be used to accomplish his objectives other than push Dillard to plead guilty.

In this case, Dillard's communication with Ansell was questionable. Ansell went to see Dillard twice: (1) PSR meeting; and (2) Sentencing Hearing. When Ansell was appointed as Dillard's counsel, Ansell told Dillard that he "could suppress the evidence and beat the traffic stop." However, in just a matter of 72 hours, Ansell's defense plan took a 360-degree turn, he now refused to do anything to combat any of Dillard's charges and persuaded Dillard to take the plea offer of seven (7) years instead. In fact, Ansell coerced Dillard to plead guilty by telling him that he would be facing a 20-year sentence should he opt to proceed to trial.

**Fact**: Ansell was adamant that Dillard would only receive a 7-year sentence, in which he will only serve 5 years. Although, Dillard understands that nothing is guaranteed, he had to put all his trust in Ansell's hands as he did not know anything about the Federal Law.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. Because Dillard wholly relied on counsel's advice, Dillard acquiesced to same. Ansell failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Ansell failed to do so.

7.

## 2.   Failure to File Any Substantive Pretrial Motions and An Adequate and Independent Pretrial Investigation

Ansell failed to file any substantive pretrial motions on behalf of Dillard to determine the strength of its case-in-chief. He could have filed motions such as Motion for Discovery and Motion to Suppress Evidence. Ansell filed no pretrial motions because from the beginning, he did not want to proceed to trial, so no strategy was ever developed.

The record in this instance speaks for itself. The U. S. District Court Docket Report reflects that there were **no substantive pretrial motions** filed by Ansell prior to Dillard's guilty plea. Ansell missed out on a golden opportunity to assess and evaluate the strength of the government's case and the evidence that they had against Dillard.

Such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case and would have aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial. Because Ansell failed to perform his job dutifully, Dillard was unable to obtain the Discovery that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial. As such, he relied on Ansell's erroneous advice to his detriment. Ansell's representation was deficient because Dillard was not properly informed of the relevant circumstances and likely consequences of pleading guilty as opposed to standing trial in order to make an informed decision about which course to take. All Ansell did was push Dillard to plead guilty without checking or investigating the facts of Dillard's case.

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5th Cir.1983); *Neal v. Puckett,* 286 F.3d

8.

at 236-37 (internal quotation marks and citation omitted). The Supreme Court has explained the

governing standard:

> Strategic choices made after thorough investigation of law and facts relevant
> to plausible options are virtually unchallengeable; and strategic choices made
> after less than complete investigation are reasonable precisely to the extent
> that reasonable professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make reasonable
> investigations or to make a reasonable decision that makes particular
> investigations unnecessary. In any ineffectiveness case, a particular decision
> not to investigate must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to counsel's
> judgments.

*Strickland,* 466 U.S. at 690-91.

**Fact**: Ansell failed to read and investigate Dillard's October 29, 2019 traffic stop. Without

confirming with Dillard the accuracy of stipulated facts contained in the Plea Agreement, Ansell

convinced Dillard to plead guilty straight up to the 2-count Information.

In this case, Ansell failed to conduct any kind of a reasonable independent pretrial

investigation of his case. Ansell failed to research the case law or investigate the facts of Dillard's

case.    There was no independent pretrial investigation to challenge the government's case-in-chief.

Ansell failed to move the Court for a private,  investigator to independently investigate his case.

There was not any kind of independent pretrial investigation conducted whatsoever to Dillard's

knowledge except for reading the government's case file and discussing it with the government

prosecutor. It is well settled in this circuit that a criminal investigation requires investigators to piece

together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence

or guilt. See *Sawyer*, 799 F.2d at 1508 ("counsel has a duty to make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary"(quoting *Strickland*,

9.

466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

Ansell failed to investigate the following:

**1. *Validity of the Traffic Stop*.** Traffic stops are not voluntary, but you are not under arrest. This is a temporary detention, but the protections of the Fourth Amendment of the Constitution related to search and seizure still apply. Every traffic stop must either rise to "reasonable suspicion" or "probable cause." From DWI/DUI cases to narcotics cases, traffic stops are the key to tons of arrests. Challenging the legality of the officer's initial temporary detention is often a key issue in criminal cases. If the officer's temporary detention was unlawful or unreasonably long, a court can suppress all evidence seized after the detention. This could include field sobriety results, in toxilizer results, large quantities of drugs, or even a murder weapon.

**Fact:** On October 29, 2019, Dillard was leaving from picking up the vehicle in question, a 2008 Grand Prix G7 from Graham's Auto Shop, where the car had been in negotiation to be purchased from another party. The said car was still titled to the person, whom Dillard had been buying multitude of vehicles from to do minor repairs and resell for a sizeable profit. Dillard was dropped off at 3309 E. 21st at 3:45 p.m. and took possession of the car (which had been towed there after both front wheels had come off while Dillard was traveling northbound on Shadeland Avenue to his hometown), so repairs were made, washed, and detailed out. Before being towed, Dillard removed all personal belongings including the registration (by accident), therefore, nothing was left in the vehicle at all because based on Dillard's experience, things had been stolen by truck drivers before. While Dillard was paying for the car's remaining balance at the auto repair shop, he was

alerted that he would need new fenders for both sides of the front of the car. Hence, Dillard left the shop to get $3,000– money he made from a previous purchaser of a 2008 Ford Focus. Dillard was already in possession of $4,500– money from his wife's store, B&D Boutique's 2-day balance and was supposed to be deposited in the bank. The $4,500 was in a rubber band in the car's center console, along with three (3) cellular phones and paper receipts for proof of the money. Heading to B&B Auto Body, owned by Dillard's family member, Joseph Buntin, who does all body works for Dillard's cars, had discussed Dillard dropping the car off the 2008 Grand Prix G7 for the fenders replacement. When Dillard arrived at Buntin's shop, located on 22nd and Sheldon, Joseph Jr. advised Dillard that his father had already left and would return later that day. They noticed the Police presence at a house north of Sheldon, on the left side of the street (from the position of Dillard's vehicle facing northbound) as if they were in the middle of a residence raid and upset that they did not have the suspect they were looking to arrest. Joseph Jr. made a comment to Dillard saying, "Cousin it is hot," in reference to police presence on the entire north end of the block. Dillard then shook his hand and pulled from the curb and approached the stop sign at 22nd Street, making a complete stop and signaled to make a left turn and headed west bound on 22nd Street and College Avenue, then signaled to make a right turn. Upon that, Dillard noticed lights 2 cars back, which the officers being the third car behind Dillard. Dillard proceeded to make his right turn thinking the police had whom he was after, but as Dillard made the right turn, one marked police car and unmarked cars were coming southbound in his direction, in the wrong side of traffic and the police car from the rear approached and pulled him over and rolled all his windows down. The marked car in front of Dillard jumped out first, gun drawn and the police from the rear quickly approached of which Dillard asked, "what was going on? I'm not doing anything out here, what's up?" While

11.

Dillard flip the sun visor down, where he keeps his identification and registration at all times, the officer on the left hand side said to Dillard, "It's nothing, where was the vehicle registration?" and proceeded to flip the passenger sun visor, then the glove compartment, and then the center console. When the officer noticed the nice stack of money NOT drugs and 3 cellular phones on the dash (on a cellphone mount), the situation shifted quickly as he said he was going to run Dillard's name and made the officers aware he [Dillard] was not the guy nor person they were looking for, but signaled to the officer on Dillard's driver side to move in. The officer pulled his firearm and held it on Dillard's temple, then proceeded to open the door. Dillard quickly threw his hands up while his door was opened, he stretched out hitting the gas pedal and realized another car glitch that needs to be fixed– transmission linkage, which the gear shift has to be played with sometimes and be completely placed in "park." It was in "neutral," which when Dillard stretched out in surprise from the officer's intimidating actions, a body reflex, avoiding getting head shot. Dillard revved the motor then moved swiftly to assure the car was in "park." Dillard did not move again afterwards, that even when the officer asked him to undo his seatbelt, he told him to do it– that is when Dillard realized there were eleven (11) officers on the scene, all of which were of the crew that was on Sheldon's north side Dillard viewed before leaving the street. While in custody, a family member advised Dillard that all the officers piled in vehicles and rushed after him, after Dillard made his exit from the shop, thinking he was the guy with a federal arrest warrant.

On October 29, 2019, Dillard was not stopped for a traffic violation as he did not commit a traffic violation nor was there a reasonable suspicion to justify the stop. It was nothing but mistaken identity– Dillard was stopped due to being mistaken for someone else with an outstanding arrest warrant. Despite the absence of any traffic violation and reasonable suspicion, 11 officers harassed

12.

and threatened Dillard. Would it really take 11 officers to ticket a traffic violator who failed to signal prior to turning and turning into the furthest west lane going northbound? These are basic facts of the case that Ansell overtly dismissed.

**2.** *Discovery*. Ansell failed to obtain discoveries in the instant case. How come the so-called evidence came in the form of pictures as opposed to recorded video captured by police body cameras or dash cams? Had Ansell requested for the body cams and dash cams, it would definitely prove that traffic stop was illegal as and that no large pressed chuck of suspected heroin was observed (it was money).

**Fact:** Officers claimed that Dillard failed to signal but the turn signal was still on after he was handcuffed and the officers were aware of that fact.

**3.** *Witnesses*. Ansell failed to interview witnesses on Dillard's behalf. The officers stated that Sergeant Shaughnessy spoke with Dillard's wife on the phone, telling that the vehicle the defendant was driving belonged to her– one of the biggest lies in this case. Had Ansell interviewed Dillard's wife, he would find out that Dillard's wife was unaware of the said vehicle; and Joseph Jr., he could prove to the Court that Dillard was followed by the officers from the time he left the auto shop and was not pulled over for some traffic violations.

**4.** *Evidence*. Ansell failed to question the so-called evidence, to with: working digital scale with heroin residue. There was no presence of digital scale in the vehicle in question as Dillard had removed all personal belongings including the registration (by accident) in the car before the day of the traffic stop. The officer saw nothing in plain sight but $7,500 in cash– which is not a probable cause to point a gun at Dillard and search his vehicle. Further. Ansell failed to consider that there were receipts to prove that the $7,500 cash was legally obtained from Dillard's wife's business and

13.

sale to a previous car purchaser and not drug proceeds. More so, the firearm was not tested for fingerprint matching, even the alleged digital scale (that came from nowhere). The government had no proof that Dillard carried a firearm during and in relation to a drug trafficking crime, clearly because there was no drug trafficking crime. Had Ansell requested for all of the officers body cams and dash cams, a black and white picture can be clearly drawn that the officers found no digital scale and the traffic stop was a complete violation of Dillard's Fourth Amendment right.

**Note:** *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968) was a landmark decision of the Supreme Court of the United States in which the Court ruled that it is not unconstitutional for American police to "stop and frisk" a person they reasonably suspect to be armed and involved in a crime. Specifically, the decision held that it is not a violation of the Fourth Amendment to the U.S. Constitution's prohibition on unreasonable searches and seizures when a police officer stops a suspect on the street and questions him or her even without probable cause to arrest, so long as the police officer has a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. The Court also ruled that the police officer may perform a quick surface search of the person''s outer clothing for weapons if they have reasonable suspicion that the person stopped is "armed and presently dangerous". This reasonable suspicion must be based on "specific and articulable facts", and not merely upon an officer's hunch.

This permitted police action has subsequently been referred to in short as a "stop and frisk", or simply a "*Terry* frisk". The *Terry* standard was later extended to temporary detentions of persons in vehicles, known as traffic stops; see Terry stop for a summary of subsequent jurisprudence.[citation needed] The rationale behind the Supreme Court decision revolves around the understanding that, as the opinion notes, "the exclusionary rule has its limitations." The meaning of the rule is to protect persons from unreasonable searches and seizures aimed at gathering

evidence, not searches and seizures for other purposes (like prevention of crime or personal protection of police officers).

Because there was no probable cause to: 1) stop Dillard, 2) point a gun at him; 3) handcuff and frisk him (from which they found nothing but $40 in his person, and 4) search his car hence, the police officers did nothing but violate Dillard's Fourth Amendment right multiple times. And yet, Dillard's appointed counsel coerced him to pleading guilty.

**Fact:** Dillard had total $7,540 in cash during the traffic stop ($3,000 from car purchaser + $4,500 wife's boutique's 2-day balance + $40 in his person). However, the officers only reported $3,187.00.

**5. _Motion to Dismiss the Firearm Charge_**. As there was no drug trafficking crime, Ansell failed to dismiss Count 2s of the Information. Dillard urges this Court to consider the Supreme Court's Decision in _Bailey v. United States_, No. 94-7448 (December 6, 1995), which reads:

> Under 18 U.S.C. § 924 (c) (1), a person who "during and in relation to any crime of violence or drug trafficking crime * * * uses or carries a firearm" is subject to a five-year minimum sentence. In _Bailey v. United States_, the Supreme Court held that conviction of a defendant for "use" of a firearm under Section 924(c) requires "evidence sufficient to show an active employment of the firearm by the defendant." The Court explained that "use" under Section 924(c) (1) "includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." In addition, "an offender's reference to a firearm in his possession could satisfy § 924(c)(1), if it is "calculated to bring about a change in the circumstances" of the underlying crime of violence or drug trafficking crime.

> The Court rejected the government's contention that "placement of a firearm to provide a sense of security or to embolden" a defendant constitutes "use" under the statute. Thus, the Court held that [j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law -- whether, for example, the action in question * * fails to come within the statutory definition of the crime"). Nevertheless, in light of the Court's remand in _Bailey_ for the district court to consider whether the convictions could be upheld under the "carrying" prong of Section 924(c), we should not abandon the "carrying" argument.

**Note:** Drug Trafficking Amount

Under the federal sentencing guidelines, drug trafficking offenses are triggered when a defendant is in possession of more than a specific amount of a prohibited substance. The amount of drugs a person has to be found with in order for the minimums to apply differs, depending on the substance. For example, someone found in possession of 1 or more grams of LSD (lysergic acid diethylmide), 5 or more grams of crack cocaine, 500 or more grams of powdered cocaine, or 100 or more grams of heroin will face drug trafficking charges. People who possess amounts below the minimum amount for drug trafficking can face drug possession charges that have substantially lower penalties associated with them.

In this case, Dillard pled guilty to possession of heroin. The Information does not specify the amount of heroin. Although, officers claimed the heroin had a weight of 66.44 grams, which is definitely less than the drug trafficking amount threshold. Therefore, Dillard should have been just with mere drug possession and no firearm enhancement under 924(c) would apply.

Ansell did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Dillard would have been benefitted with a significantly less harsh sentence.

Criminal defense attorneys owe their clients "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "Though there may be unusual cases when an attorney can make a rational decision that investigation is unnecessary, as a general rule an attorney must investigate a case in order to provide minimally competent professional representation." *United States v. Best,* 426 F.3d 937 (7th Cir. 2005) (quoting *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir.1984)).

16.

Due to Ansell's failure to investigate, he was not able to properly object to the stipulated factual basis in this case (from the narrative of events to the evidence obtained, e.g. presence of the mysterious digital scale and erroneous accounting of cash). Worse, he coerced Dillard to plead guilty to a 97-month sentence, by threatening him of a 20-year sentence should he opt to proceed to trial. Accordingly, Dillard's conviction and sentence should be vacated so that he may plea anew.

### 4.    Failure to Attempt to Negotiate a Favorable Plea Agreement

The Supreme Court has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" See *Lee v. United States*, 582 US ___ (2017). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Haring v. Prosise*, 462 U.S. 306, 319 (1983) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).

To obtain relief on an ineffective assistance claim, Dillard ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have pled guilty with the benefit of a written Plea Agreement or proceed to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In this case, Ansell failed to attempt to negotiate a favorable agreement. He could have considered entering a no-contest plea, which would preserve Dillard's defenses and would allow plea bargaining. Instead, he persuaded Dillard to plead guilty to Counts 1 and 2 of the information. Before

18.

the plea hearing, Ansell misadvised Dillard that Count 1 calls for a 37-month sentence and Count 2 calls for a 60-month sentence, to run concurrently. Dillard only knew that the said sentences would run consecutively during the plea/sentencing hearing when he received a total term of 97 months. After the Court imposed its sentence, Dillard immediately advised Ansell that he wished to appeal his sentence.

If not for Ansell's erroneous assessment of Dillard's inaccurate judgment of records; failure to secure a Plea Agreement from the government; and incorrect advice, Dillard would have opted to proceed to proceed to trial and receive a significantly less harsh sentence.

"It is the lawyer's duty to ascertain if the plea is available, that it would have lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

As such, Ansell performed below an objective standard of reasonableness. Had he familiarized himself with the facts and researched the applicable law and sentencing guidelines, he would have been able to correctly inform Dillard of the likely consequences and hurdles that he faced if he pled guilty or proceeded to trial. He simply failed to do so, and as a result, Dillard was prejudiced by receiving a total sentence of 97 months. *Glover*, supra.

As such, Dillard easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. Ansell's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Dillard.

Ansell's advice was not a predication, probability, or an estimate, but rather a lack of communication with Dillard. In turn, Dillard had to wholly rely on his erroneous advice. Thus, Dillard was not fairly apprised of the consequences of his decision to plead guilty. In other words, Dillard's reliance on Ansell's significantly flawed advice about the consequences of pleading guilty rather than proceeding to trial violated his due process rights. See *Hill*, 474 U.S. at 56. Accordingly, Dillard's conviction and sentence should be vacated for relief in the first instance.

**B.    Sentencing Counsel's Failure To File a Notice of Appeal Deprived Dillard of Effective Assistance of Sentencing Counsel and a Fair and Just Sentence.**

The Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Rodriquez v. United States,* 395 U.S. 327 (1969); *Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

Here, Dillard wanted to appeal but Ansell never consulted with Dillard about a possible appeal. Instead, he left Dillard in dark but refusing to speak to him and withdrew as his counsel. See Exhibit 1.

A lawyer performs deficiently if he "disregards specific instructions from the defendant to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer also performs deficiently if he fails to discuss the advantages and disadvantages of an appeal and fails to ascertain

20.

the defendant's wishes about an appeal whenever "there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 478-80.

To demonstrate ineffective assistance of counsel based on a claim that counsel failed to file a notice of appeal, Dillard must show Ansell performed deficiently and that a reasonable probability exists that, but for counsel's deficient conduct, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 476-77, 484, 486. Counsel's performance is deficient if counsel disregards his client's wishes concerning filing an appeal. *Id.* at 477-78. Dillard need not demonstrate that he would have been able to raise a meritorious issue on appeal. *Id.* at 483-86. Instead, if he demonstrates by a preponderance of the evidence that he ordered Ansell to file a Notice of Appeal, prejudice will be presumed, and he should be allowed to file an out-of-time Notice of Appeal. See *Kitchen v. United States*, 227 F.3d 1014, 1020 (7th Cir. 2000). Dillard need only show "that there is a reasonable probability that, but for [Ansell] failure, he would have timely appealed." *Id.* at 265.

In addition to considering whether a defendant has clearly communicated a desire to appeal and whether such communication was made in a timely manner, the Court must also consider whether counsel "fully inform[ed] the defendant as to his appellate rights." To meet his constitutional duty, Ansell had to do more than simply give Dillard notice "that an appeal is available or advise that an appeal may be unavailing." *Id.* Instead, he must have advised Dillard "not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *Id.* Failure to provide such advice constitutes constitutionally deficient performance. *Id.*

21.

When considering prejudice in a case involving counsel's failure to file a Notice of Appeal, the Seventh Circuit does not require Defendant to show that his appeal would have had merit. *Vinyard*, 804 F.3d at 1228 (citing *Flores-Ortega*, 528 U.S. at 486)). The reason that Dillard need not make this showing follows the reasoning in *Strickland* that when counsel's acts render a court proceeding unreliable or nonexistent, the Court presumes prejudice with no further showing from the defendant of the merits of his claims. *Flores-Ortega*, 528 U.S. at 484. Thus, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* As such, "the defendant must only demonstrate that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Id.* The Court's focus therefore should be on whether Dillard can demonstrate that, but for Ansell's deficient performance, i.e., his failure to file a Notice of Appeal, he would have appealed the District Court's Judgment in a Criminal Case [Doc. 66] in a timely manner. *Flores-Ortega*, 528 U.S. at 484.

As the record fails to conclusively establish that Dillard did not instruct Ansell to file a notice of appeal, this Court may grant Dillard relief in the form of an out of time appeal in the first instance. In the alternative, the Court should hold an evidentiary hearing to expand an incomplete record and resolve this matter.

## VI. CONCLUSION

For the above and foregoing reasons, Dillard's conviction and sentence should be vacated so that Dillard can plea anew. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Dillard may further prove his meritorious grounds for relief, resolve facts in dispute and expand an incomplete record.

PRAYER TO THE COURT

(10).Wherefore, petitioner prays  that this Honorable Court will
vacate and set asside the conviction and plea in this matter and in the
alternative to grant a resentencing hearing to prevent a total miscarriage
of justice. Further he prays that this Court conduct an evidentiary
hearing as the records would not reflect that he is otherwise not so
entitled to such a hearing and any other relief this Court deems just and
proper so he prays.

RSPECTFULLY SUBMITTED,

08 / 10 /2021          *Mr. Marcus Dillard* 17281-028
                      Mr.Marcus Dillard, #17281-028
                      FCI-Memphis
                      P.O.BOX 34550
                      Memphis, TN. 38184-0550


CERTIFICATE OF SERVICE

This is to certify that I have sent to the parties a copy of the
forgoing Amended Memorandum of Law, by mailing this copy postage
Prepaid to Mr.Abhishek Kambi, AUSA
          Office of the United States Attorney
          10 West Market Street, suite 2100
          Indianapolis, In. 46204-3048

                      *Mr. Dillard, Marcus*
                      Mr.Marcu Dillard,#17281-028


23.